**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOSE GUILLERMO ANDUEZA CROCE,   :
      :
   Plaintiff,          :     Civil Action No.:   21-00264 (RC)
      :
   v.            :     Re Document Nos.:   7, 12
      :
MERRICK B. GARLAND, Attorney General,  :
   United States of America     :
      :
   Defendant.        :

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SURREPLY**

## I.  INTRODUCTION

Plaintiff Jose Guillermo Andueza Croce applied to become a Special Agent with the FBI but was medically disqualified due to a color vision deficiency in 2016.  He submitted a request for a waiver of that requirement in March 2017, to which the FBI has not yet responded.  Andueza contacted the FBI's Equal Employment Opportunity (EEO) office in April 2020, filed a complaint with the agency in June 2020, and brought the present lawsuit in January 2021.  The Government has moved to dismiss on the grounds that Andueza has failed to exhaust administrative remedies.  The Court grants in part the Government's motion as it relates to the initial medical disqualification in 2016 and denies it in part as it relates to the 2017 request for a waiver.

## II.  FACTUAL BACKGROUND

Andueza has commendably served this country as an Intelligence Analyst with the Federal Bureau of Investigations (FBI) for over a decade.  Pl.'s Original Compl. ("Compl.") ¶ 5, ECF No. 1.  In 2014, he sought to broaden that admirable record of service by applying to

become a Special Agent.  *Id.* ¶ 6.  Despite successfully passing the first two phases of the

selection process and receiving a conditional offer in August 2016, his application was rejected

on October 17, 2016 because a medical officer had determined that he suffered from "color

blindness."  *Id.* ¶¶ 6, 8.  The letter informing him of the decision read:

> Your applicant fitness for duty examination for the Special Agent position has undergone
> an individualized assessment by a FBI medical officer. The Medical Officer has
> determined that your medical condition, color blindness, may jeopardize your ability to
> safely and efficiently perform the essential functions of this position. We understand this
> determination is a disappointment to you; however, please know that your current duties
> in the FBI are already making a significant contribution to the security of our country.

Ex. A of Pl.'s Resp. to Def.'s Mot. Dismiss ("Pl. ROI"), at 15,[1] ECF No. 9-1.

In response, on March 9, 2017, Andueza sent an email through his Special Agent in

Charge to the FBI's Assistant Director for Human Resources, David Schlendorf, "requesting a

waiver . . . so I can continue with the FBI Special Agent Application process."  *Id.* at 16–17;

Compl. ¶ 9.  Andueza attached a letter from his doctor as supporting medical evidence.  Compl. ¶

9.  Mr. Schlendorf responded in May 2018, stating that the office had "reviewed your . . . email

appealing the discontinuation of your application" and requesting additional information.  Pl.

ROI at 18; Compl. ¶ 10.  Andueza provided the information, which included documentation of

how he could correct his minor color vision deficiency with a special lens, in June 2019.  Compl.

¶ 10; Pl. ROI at 21.  The agency acknowledged receipt in December 2020.  Pl. ROI at 25.

Andueza followed up on his request in January 2020 requesting a response within thirty days.

Compl. ¶ 10.  After hearing no response, *see* Compl. ¶ 10; Def.'s Mem. Supp. Mot. Dismiss

("Def. Mot."), at 2, ECF No. 7-1, he contacted an EEO counselor in April 2020 and filed an EEO

---

[1] Because Andueza submitted only selected pages from the full ROI, the page numbering
of Plaintiff's ROI Exhibits cited here corresponds to the pdf page numbers in the attachment at
ECF 9-1 rather than the original pagination of the ROI.

complaint with the FBI in June 2020, Ex. A of Def.'s Mot. Dismiss ("EEO Compl."), ECF No. 7-2.

As alleged in the Complaint, the reason for the agency's failure to respond was that it had put a handful of applicants with color vision deficiencies "on hold" pending a legal determination about how to individually assess those waiver requests.  Compl. ¶ 13.  The Complaint alleges that Andueza and at least four other candidates have been trapped in this "limbo" for several years and that the FBI still does not provide individualized waiver assessments to individuals with color vision deficiencies.  *Id.*.

When Andueza was interviewed by the EEO officer in May 2020, the counselor marked a box noting that the contact was initiated more than 45 days beyond "any of the alleged discriminatory incidents" but explained in an annotation that "Mr. Andueza provided all allegations of harm to show a pattern of on-going discrimination."  Pl. ROI at 4.  That form also described Andueza's claim as having "been subjected to discrimination based on his disability when from March 2017 through the present, the Human Resources Division failed to provide a response to his Special Agent (SA) waiver request."  *Id.*  After 180 days without a decision on his complaint, Andueza filed suit in this court.  Compl. ¶ 16.  The Government has moved to dismiss the complaint, arguing that Andueza failed to exhaust administrative remedies by not contacting EEO within 45 days of the discriminatory action, as required by regulation.  Def. Mot. at 5–7; 29 C.F.R. § 1614.105(a).

### III.  PRELIMINARY MATTERS

#### A.  Legal Standard

A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits, but rather "tests the legal sufficiency of a complaint" by asking whether the

plaintiff has properly stated a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). But "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Id.* A court need not accept a plaintiff's legal conclusions as true, *id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *Twombly*, 550 U.S. at 555. "[A]n affirmative defense may be raised . . . under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).

### B. Reliance on Documents Outside of the Pleadings

"In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). At the motion to dismiss stage, the Court may also rely on documents provided in the briefing "upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint." *See Angelex Ltd. v. United States*, No. 15-0056, 2015 WL 5011421, at *11 n.11 (D.D.C. Aug. 24, 2015) (internal quotation mark omitted) (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768

F. Supp. 2d 117, 119 (D.D.C. 2011)).  In employment discrimination cases, courts may, and often do, take judicial notice of EEOC charges and EEOC decisions.  *See, e.g.*, *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018); *Spence v. Wolf*, No. 19-cv-2919, 2020 WL 6075727, at *3 (D.D.C. Oct. 15, 2020).  "[C]ourts may typically refer to administrative records of Equal Employment Opportunity complaints, investigations, and adjudications for the limited purpose of determining whether Plaintiff exhausted administrative remedies before suing without converting the Motion to Dismiss into a Motion for Summary Judgment . . . ."  *Roberts v. Scalia*, 1:19-cv-00474, 2020 WL 1892057, at *3 n.2 (D.D.C. Apr. 16, 2020).

Both parties attach additional documents from the FBI's EEO investigation in their briefing that they contend are properly considered at the Motion to Dismiss phase.  *See* Def. Mot. at 2 n.1; Pl.'s Resp. to Def.'s Mot. Dismiss ("Opp'n"), at 1 n.1, ECF No. 9.  The parties appear to agree that the EEO complaint form and correspondence between Andueza and the FBI, while not attached to the Complaint, are incorporated there by reference.  *See* Def. Mot. at 2 n.1; Opp'n at 1 n.1; *see also St. Francis Xavier Parochial Sch.*, 117 F.3d at 624 (allowing for consideration of "documents either attached to or incorporated in the complaint" at the motion to dismiss stage).

Neither party disputes the authenticity of those materials, but the FBI objects to the inclusion of some pages in the ROI that it claims are privileged and were inadvertently released.  *See* Def.'s Reply Supp. Mot. Dismiss ("Reply"), at 4 n.5, ECF No. 10 ("Plaintiff cites portions of the [ROI] that include material protected by the attorney-client privilege . . . . Those communications were inadvertently included . . . . Nevertheless, it is also apparent from those documents that Plaintiff was disqualified from the Special Agent position.").  The disputed portions of that attachment are the subject of a pending motion for a protective order that is not yet ripe and which the Court takes no opinion on here.  *See* Def.'s Mot. Protective Order, ECF

No. 14.  For the purpose of resolving the present motion to dismiss, the Court will therefore

consider only the additional attachments to the Motion to Dismiss and the non-disputed

attachments to the Opposition.[2]

## IV.  ANALYSIS

### A.  Administrative Exhaustion under the Rehabilitation Act

The sole count alleged in Andueza's complaint is for discrimination on the basis of his

physical disability under the Rehabilitation Act.  Compl. ¶ 17.  The Rehabilitation Act requires

federal employees to exhaust administrative remedies by submitting a claim to the employing

agency before bringing suit.  *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015).  The

procedures for doing so, both under the Rehabilitation Act and other federal anti-discrimination

laws, are established by regulation at 29 C.F.R. § 1614 *et seq.*

The first step of that process is for an individual to "initiate contact with a [EEO]

Counselor within 45 days of the date of the matter alleged to be discriminatory,"  29 C.F.R.

§ 1614.105(a)(1), although that time may be extended by the agency where the employee was

not notified of the time limits, was not reasonably aware of the discriminatory act, or  "for other

reasons considered sufficient by the agency," *id*. § 1614.105(a)(2).  Following informal

counseling, the aggrieved individual may then file a complaint with the agency that allegedly

discriminated against the complainant.  29 C.F.R. § 1614.106(a).  Prior to a request for a hearing,

the agency shall dismiss a complaint "[t]hat fails to comply with the applicable time

limits . . . unless the agency extends the time limits in accordance with § 1614.604(c) . . . ."  29

---

[2] The Government attaches additional emails to its Reply brief without contending that they are incorporated by reference in the Complaint or that they are necessary to resolve this Motion.  *See* Reply at 3 n.3.  The Court also has not considered those additional attachments in resolving this Motion.

C.F.R. § 1614.107.  Section 1614.604(c) in turn states that the time limits within the regulations are subject to equitable tolling, waiver, and estoppel.  *Id.* § 1614.604(c).  "Once [the formal administrative grievance] process concludes or stalls, the Rehabilitation Act authorizes the filing of a lawsuit in federal court by 'any employee or applicant for employment aggrieved by the final disposition of [her administrative] complaint, or by the failure to take final action on such complaint.'"  *Doak*, 798 F.3d at 1100 (quoting 29 U.S.C. § 794a(a)(1)).

The failure to comply with the proscribed timelines is non-jurisdictional, meaning that they are subject to the doctrines of waiver, equitable tolling, and estoppel.  *Id.* at 1103–04; *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008) (stating that failure to comply with the 45-day limit bars review "absent a basis for equitable tolling"); *Williams v. Brennan*, 320 F. Supp. 3d 122, 127–28 (D.D.C. 2018), *aff'd*, No. 18-5256, 2019 WL 669716 (D.C. Cir. Feb. 12, 2019) (discussing *Doak*, 798 F.3d at 1103–04) (describing how "statutory and administrative exhaustion requirements" have distinct jurisdictional consequences).  "The initial burden of establishing a plaintiff's failure to exhaust administrative remedies rests with the defendant; the plaintiff, however, has the burden of demonstrating that equitable tolling is warranted."  *Foster v. Gonzales*, 516 F. Supp. 2d 17, 22 (D.D.C. 2007) (internal citations omitted).

### B.  The October 2016 Disqualification

The primary dispute between the parties at this stage is whether Andueza has complied with the relevant procedure by contacting an EEO officer within 45 days of the alleged discriminatory act.  Andueza first contacted an EEO counselor on April 30, 2020.  *See* EEO Compl.  The Government maintains that the sole discriminatory act alleged in the Complaint is Andueza's disqualification from the Special Agent application process, which occurred in October 2016—making his initial contact with EEO several years too late.  *See* Def. Mot. at 5;

Reply at 3.  The Government also contends that Andueza's waiver request was an internal method of review that does not toll or extend the 45-day period.  Reply at 6.  Andueza argues that the October 2016 decision was never final, and that his waiver request was instead an integrated part of the same application, which remains undecided to this day.  Opp'n at 8–11.

### 1.  Finality of the Decision

"An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  That clock begins to run "when the aggrieved 'knew, or should have known, about the alleged discriminatory action.'"  *Gonzalez v. Clinton*, No. 9-cv-1026, 2011 WL 13273217, at *3 (D.D.C. June 24, 2011) (quoting *Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003)).  Andueza knew upon receipt of the October 2016 letter that he had been disqualified from the Special Agent process and that his color vision deficiency was the reason for his disqualification.  Compl. ¶ 8.  Therefore, to the extent that his EEO complaint challenged his disqualification in October 2016, it was several years too late.

It is settled law that "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll[3] the running of the limitations periods."  *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980).  Andueza argues, however, that his March 2017 waiver request extended the application process itself rather than collaterally reviewing it, meaning the October 2016 decision was never final.  Opp'n at 10–11.  The Court determines that

---

[3] The Court takes care to note that Andueza argues that the October 2016 decision was never final, not that the waiver request *tolled* the 45-day time limit.  Nor could he—not only is that argument squarely foreclosed by the precedent in *Ricks* cited above, Andueza submitted the waiver request in March 2017, Compl. ¶ 9, already more than 45 days after the October 2016 letter.  But because the cases on tolling contain relevant analysis on the issue of finality and are discussed at length by the parties, the Court considers them here for that purpose.

neither the relevant case law nor the allegations in the Complaint support that characterization of the October 2016 decision.

As a general matter, knowledge of a discriminatory decision starts the clock for statute of limitations purposes despite the existence of procedures that may change the ultimate outcome. In *Ricks v. Delaware State College*, a professor was informed that he would not receive tenure and that his teaching contract would expire the following year.  449 U.S. at 252–53.  The Supreme Court determined that "the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to Ricks . . . even though one of the effects of the denial of tenure . . . did not occur until later."[4]  *Id.* at 258.  The Court treated the letter denying tenure as a final employment decision even though that very letter "explicitly held out to Ricks the possibility that he would receive tenure if the Board sustained his grievance," *id.* at 260, reasoning that "[t]he grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to influence that decision before it is made," *id.* at 261 (emphasis in original).

The Government's citation to *Foster v. Gonzalez*, 516 F. Supp. 2d 17, is likewise persuasive.  In *Foster*, an employee received a letter terminating his employment effective immediately, but argued that his pursuit of an internal appeal which allowed for independent factual redeterminations made that letter a "non-final" decision.  *Id.* at 23 & n.4.  The court disagreed, pointing out that the regulation required contact "within 45 days of the *effective* date of the action," and his termination had undisputedly become effective when he received the

---

[4] *Ricks* involved a deadline for filing an EEOC complaint under 42 U.S.C. § 2000e-5(e) rather than the 45-day time limit for contacting EEO here.  *Ricks*, 449 U.S. at 256.  Because the 45-day time limit functions like a statute of limitations, *see Doak*, 798 F.3d at 1104, the same underlying principles apply.

letter.  *Id.* at 23 (quoting 29 C.F.R. § 1614.105(a)(1)) (emphasis in original).  Moreover, even if the appeal could have reinstated Foster, "the denial of an appeal" is not "a fresh act of discrimination that triggers the 45-day deadline anew."  *Id.* (internal quotations omitted).

Nor was the *Foster* court swayed by the policy consideration that "a favorable decision on his internal appeal might have mooted completely the need to pursue a Title VII remedy."  *Id.* at 25.[5]  While true, "the Supreme Court confirmed that Title VII and internal grievance procedures should be undertaken concurrently even though the pursuit of both could lead to *conflicting* results," and "the application of Title VII requirements should not vary depending upon whether a claimant chooses to pursue voluntary internal appeals."  *Id.*  This logic likewise applies to Rehabilitation Act claims raising discrete acts of discrimination (such as the medical disqualification) which are governed by the same regulation.  *See Roberts*, 2020 WL 1892057, at *7 ("[U]nder both the Rehabilitation Act and Title VII . . . the standards for analyzing whether [the plaintiff] has exhausted administrative remedies is the same . . . .").

Andueza places great weight on the phrase "collateral review" in *Ricks*, *Foster*, and other cases, contrasting his waiver request as part of an "integrated" process.[6]  *See* Opp'n at 10–11 &

_____

[5] To be sure, Andueza raised the same issue—disqualification on the basis of his color blindness—in both the EEO complaint and the waiver request, unlike the distinct issues in Foster's internal appeal and his Title VII claim.  *See* Opp'n at 9–10.  But contrary to Andueza's assertion, *id.*, that was not the dispositive reason that the two processes should have run concurrently in *Foster*.  Rather, it was because "[t]he two remedies 'have legally independent origins and are equally available to the aggrieved employee.'"  *Foster*, 516 F. Supp. 2d at 24 (quoting *Int'l Union of Elec., Radio & Mach. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 236 (1976)).

[6] Andueza's Motion for Leave to File a Surreply seeks to respond to the discussion of *Ricks* that appears in the Government's Reply brief.  Pl.'s Mot. Leave to File Surreply ("Surreply Mot."), ECF No. 12.  A court determining whether to allow a surreply considers whether the reply raises new arguments, whether the proposed surreply would be helpful to the resolution of the pending motion, and whether the other party would be unduly prejudiced.  *Glass v. Lahood*, 786 F. Supp. 2d 189, 230–31 (D.D.C. 2011).  "[T]he determination of whether to grant or deny leave is entrusted to the sound discretion of the district court."  *Id.* at 231.  The Government's

n.5.  But this is ultimately a distinction without a difference.  Andueza does find some support

for this reasoning in *Harris v. Ladner*, 127 F.3d 1121 (D.C. Cir. 1997).  *See* Opp'n at 10.  In

*Harris*, a professor was notified of a negative tenure decision, but the court determined that it

was not a final decision until after she had passed through the reconsideration process.  127 F. 3d

at 1124.  The key to this holding, however, was not that the reconsideration was a direct rather

than collateral review, but that the university "conceded during oral argument [that] those

procedures provide for reconsideration *before* the final decision"—meaning that the decision

itself was never final.  *Id.* (emphasis in original).  The FBI makes no such concession here.

The Court is similarly unconvinced by the dicta in *Truelove v. Trs. of the Univ. of D.C.*,

744 F. Supp. 307 (D.D.C. 1990).  The holding in *Truelove* was that the Title VII statute of

limitations ran from the date that Truelove had been notified of a negative evaluation.  *Id.* at 311.

But the court also observed that Truelove "declined to file a direct appeal of his evaluation," and

as a result "because any review instigated by his actions would be collateral and conducted

outside the formal appeals process, it would not toll the commencement of the limitations

period."  *Id.*  Still, that does not necessarily mean that the outcome would have been different if

Truelove had filed a "direct" appeal rather than a "collateral" one.  *See* Opp'n at 11.  Indeed, in

*Ricks*, the employee did appear to follow the proscribed internal procedures for direct review, but

the Court still referred to the grievance as "collateral."  *Ricks*, 449 U.S. at 252.

---

discussion of *Ricks* responded to Andueza's already well-developed argument about whether his
waiver request was "collateral."  *See* Opp'n at 10–11.  While Andueza may take issue with the
Government's selective quotation of *Ricks*, that does not make the Government's argument
"new" such that he requires an opportunity to respond.  *See id.*  Nevertheless, because the Court
disagrees with Andueza on the merits of this argument, it would reach the same result either way.
The Court therefore grants the motion and will deem the proposed surreply, which was attached
as an exhibit to the Surreply Motion, filed.

Collectively, these cases suggest that the label of an internal process as a grievance, an appeal, a reconsideration, a waiver, or some other term is less important than its function: whether it seeks to change a decision that has already been made. *See Gonzalez*, 2011 WL 13273217, at *5 ("Where the plaintiff alleges that the employer promised to reconsider a decision, the inquiry becomes did the 'reconsideration' constitute 'a remedy for a prior decision, [or] an opportunity to influence that decision before it [wa]s made.'") (quoting *Ricks*, 449 U.S. at 261). The Court concludes that the function of Andueza's March 2017 waiver request was to remedy a decision that had already been made in October 2016.

First, the language of the procedure for requesting a waiver—submitted by Andueza as part of the EEO record—indicates that it is a safeguard for reviewing or overriding a medical disqualification, not for influencing it in advance. Pl. ROI at 14 (policy stating that "[a]pplicants deemed medically disqualified for the SA position may submit appeals in writing"). The existence of that waiver procedure, and even the FBI's "willingness to change its prior decision" if needed, "does not suggest that the earlier decision was in any respect tentative." *Ricks*, 449 U.S. at 261.

Next, the Medical Officer's decision disqualified Andueza from the Special Agent application process in no uncertain terms. The language of the letter was final, including a recognition that "[w]e understand this determination is a disappointment to you." Pl. ROI at 15. Andueza also appeared to understand the communication as having a final and immediate effect, describing its content in his waiver request as "stating why I cannot continue with the FBI Special Agent process" and noting that it lacked instructions for "how [to] appeal the decision." *Id.* at 17. Even the Complaint characterizes the communication as an unequivocal decision, saying Andueza was notified "that an FBI medical officer had determined he suffered from

'color blindness' and would therefore be unable to safely perform the essential tasks of the Special Agent position."  Compl. ¶ 8.  While a court deciding a motion to dismiss must draw reasonable inferences in the plaintiff's favor, *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d at 173, a complaint cannot be amended through an opposition to a dispositive motion, *Arbitraje Casa de Cambio, S.A. de C.V. v. USPS*, 297 F. Supp. 2d at 170.  Andueza's recharacterization of the October 2016 letter as lacking finality attempts to do the latter.  *See* Opp'n at 9–10.  Thus, to the extent that Andueza challenges the October 2016 decision as discriminatory, his pursuit of administrative remedies was untimely.

### 2.  *Agency Waiver*

Andueza also argues that the FBI has waived any objections to its exhaustion argument before this Court by accepting his EEO complaint as timely in June 2020.  *See* Opp'n at 12–13. The failure to comply with the regulatory procedures for administrative exhaustion are non-jurisdictional and can be waived by the agency.  *See Doak*, 798 F.3d at 1103–04 (holding that an agency waived any untimeliness when it "not only accepted and investigated Doak's complaint, but also decided it on the merits") (cleaned up).  The FBI did accept and begin to investigate the EEO complaint.  *See* Pl. ROI at 5 (stating in the letter acknowledging his EEO complaint that the agency had "accepted for investigation" the issue of whether the failure to respond to the waiver request "from March 2017 to the present" was discriminatory[7]).  But it does not necessarily follow that the "FBI concluded the complaint was timely," as Andueza claims.  Opp'n at 12.

---

[7] This language could also imply that the FBI waived the potential untimeliness relating to the handling of the waiver request, but not the initial disqualification.  Because the Court concludes that the FBI has not met its burden of showing failure to exhaust for that latter act of discrimination, *see infra* Section III.D.3, it is unnecessary to address any potential equitable waiver argument relating to the handling of the March 2017 request at this time.

Unlike the EEO complaint in *Doak*, which the agency had resolved on the merits, the FBI has not issued any opinion in this case.  *See Doak*, 798 F.3d at 1103–04.  "[A]gencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint;" they must also address it on the merits.  *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997); *see also Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 86–87 (D.D.C. 2009) ("[T]he rationale of *Bowden* rests primarily on the agency having responded to the employee's claim on the merits during the administrative process"); *Tumblin v. Barr*, No. 19-cv-2204, 2020 WL 7078826, at *3 (D.D.C. Dec. 3, 2020) (finding that the 45-day limit was not waived where the agency accepted a claim for investigation and only raised untimeliness in the "final agency decision" and "its first substantive motion in this litigation").  Nor does the text of the regulations preclude an agency from accepting a complaint for investigation and then later dismissing it for untimeliness—to the contrary, an agency can either dismiss a complaint for untimeliness or "extend[] the time limits" at any point "[p]rior to a request for a hearing."  29 C.F.R. § 1614.107.  Andueza does not allege that either of these actions have occurred, merely that he "presented a timely EEO complaint" in the first instance.  *See* Compl. ¶ 15.  This type of bare assertion is exactly the kind of "legal conclusion[] . . . couched as factual allegation[]" that the Court need not presume to be true.  *Twombly*, 550 U.S. at 555.  Without any facts that would give rise to an inference of waiver, the Court cannot conclude that the FBI waived Andueza's failure to exhaust any potential discrimination in the October 2016 decision.

### C.  The March 2017 Waiver Request as a Separate Discriminatory Act

Yet that does not entirely end this inquiry.  "A party must exhaust . . . administrative remedies for *each* discrete act of discrimination or retaliation alleged or lose the ability to recover for it."  *Bell v. Donley*, 724 F. Supp. 2d 1, 8 (D.D.C. 2010) (emphasis added) (citing

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)).  Although Andueza failed to exhaust administrative remedies to challenge his 2016 disqualification, the Complaint also alleges a second discriminatory action: the failure to respond to Andueza's waiver request in 2017.

### 1.  Sufficiency of the Allegations Asserting a Second Discriminatory Action

The Government disagrees that a second act of discrimination had been alleged in the Complaint or raised before the agency.  *See* Def. Mot. at 5; Reply at 3.  But the Court agrees with Andueza that "the complaint describes Mr. Andueza's previously-discussed request for waiver or appeal in March 2017 and describes in subsequent paragraphs a still pending process."  Opp'n at 9.  It also includes specific factual allegations that the failure to respond to the waiver request was directly related to Andueza's disability of color vision deficiency.  *See* Compl. ¶ 12 ("Dr. Snyder acknowledges that there has been discussion about developing an individualized assessment for Special Agent applicants with a color vision deficiency.  That this is still missing from the FBI's protocol is at odds with the FBI's legal duty to individually assess all applicants."); *id.* ¶ 13 ("[T]he FBI has left these applicants in what it candidly admits is the 'legal color-vision limbo.'").[8]

---

[8] Although the Government is correct that the denial of an appeal is not a new act of discrimination, an appeal can be discriminatory in its own right if it proceeded differently for an aggrieved applicant on the basis of a protected characteristic than for other individuals undergoing the same process.  *See Ricks*, 449 U.S. at 258 ("In order for the limitations periods to commence with the date of discharge, Ricks would have had to allege and prove that the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure.").  Acknowledging that Andueza's 2017 request was both a request for accommodation and an appeal, the facts in the Complaint still suggest that the appeal was discriminatory by alleging that the FBI has treated waiver requests from individuals with color vision deficiency differently than other medically disqualified applicants.  *See* Compl. ¶¶ 12–14.

Andueza's March 2017 email "asked for a waiver" in order to continue with the Special Agent application process, and he provided specific information regarding the effectiveness of a corrective lens when requested as a follow up.  Compl. ¶¶ 9–10.  These facts properly relate to Andueza's alleged claim for failure to accommodate under the Rehabilitation Act.  *See* Compl. ¶ 17 ("Defendant failed to accommodate his disability, even though it would have been quite easy to do so.").  Federal agencies have an obligation to adopt reasonable accommodation processes that, among other things, "[d]esignate the maximum amount of time the agency has . . . to either provide a requested accommodation or deny the request," 29 C.F.R. § 1614.203(d)(3)(i)(M), and explain that even prior to that maximum, "failure to provide the accommodation in a prompt manner may result in a violation of the Rehabilitation Act," *id.* at § 1614.203(d)(3)(i)(O).

An agency's obligation to offer reasonable accommodation under the Rehabilitation Act involves "a flexible give-and-take between employer and employee" that requires good faith on both sides.  *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014) (internal quotations omitted). "The request for accommodation does not have to be formal, and the words 'reasonable accommodation' do not have to be used, but the employer must be alerted to the condition and the need for accommodation."  *Thompson v. Rice*, 422 F. Supp. 2d 158, 176 (D.D.C. 2006), *aff'd*, 305 F. App'x 665 (D.C. Cir. 2008); *see also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir.1999) ("[T]he notice does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation' . . . .").

Andueza's waiver request satisfied that notice requirement.  The FBI knew of Andueza's color vision impairment and Andueza made his desire for an accommodation of that impairment clear.  *See* Pl. ROI at 17 (stating in the email to the HR Director "I am respectfully requesting a

waiver from your behalf so I can continue with the FBI Special Agent Application process.  I have attached a letter addressed to you which provides background on myself and my current situation [and] a letter from an optometrist . . . .").  Plus, Andueza followed the exact process recommended by the FBI headquarters.  *See id.* ("[M]y applicant coordinator had to call FBI headquarters for this information and they advised to write a letter addressing you requesting a waiver.").  Finally, the response from HR Assistant Director Schlendorf both acknowledged the disability and manifested the interactive process for finding a reasonable accommodation by requesting more information, *see id.* at 18 ("Please provide some additional details, and any supporting documentation, regarding your experience with performing the Special Agent essential tasks related to vision . . . .  Please provide any details and documentation you have regarding your use of the Enchroma lens . . . ."), which Andueza provided, *see* Compl. ¶ 10.

"A party that obstructs or delays the interactive process [or] fails to communicate, by way of initiation or response" does not act in good faith.  *Ward v. McDonald*, 762 F.3d at 32 (quoting (*EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir.2005)).  In addition, "unreasonable delay in implementing a 'reasonable accommodation' can constitute a discriminatory act."  *See Krocka v. Riegler*, 958 F. Supp. 1333, 1342 (N.D. Ill. 1997) (an eight-month denial of a change in shift was a failure to accommodate); *Hill v. Clayton Cnty. Sch. Dist.*, 619 F. App'x 916, 922 (11th Cir. 2015) (a two-month wait for an air-conditioned bus); *Pierce v. Nat'l Archives & Recs. Admin.*, No. 19-cv-2876, 2020 WL 7640835, at *2 (D. Md. Dec. 23, 2020) (16 months and multiple denials before a requested accommodation was granted).  At this stage, Andueza's allegation that the FBI has left him in limbo for over two years since he provided the requested information in June 2019, and over four years in total, plausibly alleges such unreasonable delay.

### 2. Exhaustion of the 2017 Waiver Request Claim

Because the failure to process the 2017 waiver request was a separate act of discrimination, Andueza also had an obligation to exhaust it. *Morgan*, 536 U.S. at 114–15. In tandem with its assertion that the Complaint alleges only one discriminatory act, the Government argues that Andueza only complained to the FBI about his initial disqualification. *See* Def. Mot. at 5. The Government attaches the agency's EEO complaint form to its motion in support of this point, noting that Andueza had complained that "[i]n October 2016 FBI Human Resources Division (HRD) disqualified me from the Special Agent (SA) process." EEO Compl. But the very next sentence of that document states that "I requested a waiver from HRD . . . but as of 22 June 2020 I have not heard anything back" and alleges that Andueza was "treated differently" because "the Bureau does allow SA applicants who have some degree of colorblindness to become SAs." *Id.* That language describes *two* discriminatory acts.

When determining whether administrative exhaustion was timely, courts generally begin by "analyz[ing the] Plaintiff's claims to determine whether they fall into the category of discrete or ongoing discriminatory acts." *Gordon v. Napolitano*, 786 F. Supp. 2d 82, 84 (D.D.C. 2011). The Supreme Court has likewise differentiated between discrete acts, which must each be exhausted even if they are part of a pattern, and hostile work environment claims, which by "their very nature involve[] repeated conduct." *Morgan*, 536 U.S. at 115. Usually, failure-to-accommodate claims fall into the former category, because there is a specific moment when an accommodation was denied. *See, e.g.*, *Roberts*, 2020 WL 1892057, at *7 (finding a failure-to-accommodate claim untimely where the employee did not comply with the 45-day deadline); *Gulakowski v. Barr*, 19-cv-32, 2019 WL 4469241, at *5 (D.D.C. Sept. 18, 2019) (treating failure-to-accommodate claim as a discrete act that was time-barred by the 45-day limit).

However, courts have sometimes recognized ongoing patterns of discrimination outside of the narrow confines of hostile work environment, such as when there is a pattern of retaliation.  *See Nguyen v. Mabus*, 895 F. Supp. 2d 158, 184 (D.D.C. 2012) (treating the continued exclusion of an employee from certain budgetary meetings as an ongoing retaliatory harm).

The ongoing failure to provide an accommodation—or at least an individualized assessment denying it—does not fit neatly into either category.  But as the regulations and case law regarding delay on reasonable accommodation requests suggest, an agency cannot avoid its obligations by opting out of decision-making altogether.  *Ward v. McDonald*, 762 F.3d at 32 ("A party that fails to communicate" regarding reasonable accommodation requests may violate the Rehabilitation Act) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d at 805).  At the time Andueza contacted the EEO officer in 2020, his request was still pending before the FBI, and the FBI had repeatedly failed to meaningfully communicate about the status of his request.  *See* Compl. ¶ 10; EEO Compl.  And when Andueza presented that claim, the agency appears to have treated the failure to respond, rather than the initial disqualification, as the "ongoing violation" that it agreed to investigate.  Pl. ROI at 5 (accepting for investigation "whether complainant was discriminated against . . . when, from March 2017 to the present, the Human Resources Division has not responded to his Special Agent waiver request).[9]

Andueza's briefing on this point leaves much to be desired—to the point that it borders on waiving the argument.  *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[I]t is not the obligation of this Court to research and construct the legal arguments available to the

---

[9] As described above, that does not necessarily mean that the FBI determined the complaint was timely such that it waived exhaustion.  But because the Government has failed to meet its burden of showing that the Complaint was untimely at all, the Court need not decide that here.

parties.") (cleaned up).  Nevertheless, failure to exhaust administrative remedies is an affirmative

defense, which should only resolve a Rule 12(b) motion "when the facts that give rise to the

defense are clear from the face of the complaint."  *Smith-Haynie*, 155 F.3d at 578; *see also*

*Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1058 n.3 (D.C. Cir. 1988) (MacKinnon, J.,

concurring) ("[F]ailure to exhaust administrative remedies is an affirmative defense, and

therefore [the plaintiff] was not required to anticipate it in his complaint."); *Nurriddin*, 674 F.

Supp. 2d at 86 (denying a motion to dismiss where "defendants have failed to establish, on the

present record, that plaintiff failed to exhaust his administrative remedies").

    Here, it is not clear from the Complaint or the attached documents that Andueza failed to

exhaust administrative remedies regarding this second alleged act of discrimination.  Because the

Government has not met its burden of showing that Andueza failed to exhaust administrative

remedies for his claim that the FBI failed to accommodate his disability by failing to respond to

the waiver request, his lawsuit may proceed for that claim alone.

## V.  CONCLUSION

    For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED in part and

DENIED in part and Plaintiff's Motion for Leave to File a Surreply is GRANTED.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  November 9, 2021                                                  RUDOLPH CONTRERAS
                                                                         United States District Judge